UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

LAWRENCE JOHNSON,

                Petitioner,

- against -

UNITED STATES OF AMERICA,

                Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MEMORANDUM
AND ORDER
04 CV 1027 (JG)

A P P E A R A N C E S:

    LAWRENCE JOHNSON
        Reg. # 06584-084
        United States Penitentiary
        Lee County
        P.O. Box 305
        Jonesville, Virginia 24263-0900
        Petitioner *Pro Se*

    ROSLYNN R. MAUSKOPF
        United States Attorney
        Eastern District of New York
        One Pierrepont Plaza
        Brooklyn, New York 11201
    By:   Charles S. Kleinberg
        Assistant U.S. Attorney
        Attorney for Respondent

JOHN GLEESON, United States District Judge:

## BACKGROUND

        Petitioner Lawrence Johnson was convicted after trial of conspiracy to distribute and to possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846; conspiracy to distribute and to possess with intent to distribute narcotics within 1,000 feet of a public elementary school, in violation of 21 U.S.C. § 846 and 860; and unlicensed dealing in firearms,

in violation of 18 U.S.C. § 922(a)(1)(A). Johnson was sentenced on May 11, 2000 to life imprisonment, five years supervised release and special assessments of $300. The convictions and sentence were affirmed in *United States v. Flaharty*, 295 F.3d 182 (2d Cir. 2002), familiarity with which is assumed.

Though the case was tried more than a year before *Apprendi v. New Jersey*, 530 U.S. 466 (2000), was decided, special interrogatories were nevertheless submitted to the jury, which found beyond a reasonable doubt that both conspiracy convictions involved more than 50 grams of crack cocaine. See *id*. at 195. Johnson seeks to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. He argues that his trial attorney, Scott Brettschneider, Esq., and his appellate attorney, Bobbi Sternheim, Esq., rendered ineffective assistance of counsel.

For the reasons discussed below, the petition is denied.

## DISCUSSION

A. <u>The Applicable Legal Principles</u>

The Supreme Court has established the following standard for ineffective assistance claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance "fell below an objective

2

standard of reasonableness," *id*. at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694. In assessing the reasonableness of counsel's performance, judicial scrutiny "must be highly deferential," and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted); *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998); *see also Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (per curiam) ("[C]ounsel has wide latitude in deciding how best to represent a client . . . .").

In assessing counsel's performance, I "must conduct an objective review . . . measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (citations omitted) (quoting *Strickland*, 466 U.S. at 688-89)). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct" and has instead emphasized that "'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id*. at 521 (quoting *Strickland*, 466 U.S. at 688).

To establish the requisite effect of counsel's performance on the outcome of the proceeding, it is not sufficient if the petitioner shows merely that counsel's errors had "some conceivable effect" on the outcome. *Strickland*, 466 U.S. at 693. Rather, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability" is "a probability sufficient to

3

undermine confidence in the outcome." *Id*. This determination, unlike the determination whether counsel's performance fell below an objective standard of reasonableness, may be made with the benefit of hindsight. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Although the Supreme Court formulated the *Strickland* test in the context of examining a claim of ineffective assistance of trial counsel, the same test applies to claims regarding the performance of appellate counsel. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994); *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992). Appellate counsel need not present every nonfrivolous argument that could be made. *See Mayo*, 13 F.3d at 533 (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)); *see also Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (emphasizing that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's strategy choices. *See Mayo*, 13 F.3d at 533 (citing *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). A petitioner, however, may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing matters that were patently and significantly weaker. *Cf. Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) ("[R]elief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy.").

B.  Johnson's Claims

   1.  The Plea Offer

Johnson claims that Brettschneider was ineffective because he did not timely convey the government's plea offer to him. In this context, the strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment," *Strickland*, 466 U.S. at 690, creates a presumption that "counsel . . . communicate[d] to the defendant the terms of the plea offer . . . and . . . [usually] infom[ed] the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he w[ould] most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) (citations omitted). As for the prejudice prong, Johnson must show that but for counsel's deficient advice, he would have pleaded guilty. *Id*. at 48-49.

Johnson must present "objective evidence" in support of his claims in order to prevail. *See Slevin v. United States*, 71 F. Supp. 2d 348, 362 n.15 (D. Conn. 1999), *aff'd*, 2000 WL 1528655 (2d Cir. Oct. 16, 2000). Even if a petitioner and his former counsel submit contradictory affidavits, the court need not hold a hearing to resolve the credibility issue. *See Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (with respect to claim of counsel's purported failure to advise defendant of right to testify, district court properly resolved credibility issue in favor of attorney where petitioner's proffer "involved a generic claim -- one that can be, and is often, made in any case in which the defendant fails to testify -- based solely on his own highly self-serving and improbable assertions").

Based on the foregoing principles, Johnson's claim is properly rejected without a hearing. Brettschneider has submitted an affidavit, in which he states that he conveyed the government's plea offer involving a sentence of approximately 15 years to Johnson. Brettschneider further asserts that he advised Johnson to accept the offer because the case against him was strong and his sentence would be life in prison if he were convicted at trial. Brettschneider asserts that Johnson refused to plead guilty, stating that he had previously been acquitted of state charges. Brettschneider Aff. ¶ 4.

The prosecutor in the case, Assistant United States Attorney ("AUSA") Andrew Frisch, has confirmed Brettschneider's account. According to AUSA Frisch, Brettschneider told him that Johnson adamantly refused to plead guilty, and the only reason plea discussions broke off was because Brettschneider informed Frisch of that fact. Frisch Aff ¶ 3. The available evidence supports Brettschneider and Frisch.

Finally, Johnson chose to testify at trial (against Brettschneider's advice), and he protested his innocence. Sternheim Aff. ¶ 7. That is hardly indicative of a defendant who would have pleaded guilty if only he had heard of a plea offer sooner.

2. The Failure to Move to Suppress Evidence

Johnson claims that Brettschneider was ineffective in that he failed to move to suppress evidence that (1) he sold a gun to 13-year-old Matthew Abel in Virginia; (2) he was found on one occasion to have a Ruger pistol; and (3) he was found on another occasion to have an organizer, $1,400 in cash and ten empty plastic ziplock bags like those in which crack is usually sold. He further complains that the receipt of the seized items into evidence was prejudicial and involved conduct of which he was acquitted in state court. These arguments have no merit.

First, the seizure of the Ruger pistol, cash, organizer and ziplock bags occurred when the defendant's cars were stopped and searched based upon probable cause. Thus, there were no legitimate Fourth Amendment objections to make with respect to these seizures. Brettschneider Aff. ¶ 5; *Colorado v. Bannister*, 449 U.S. 1, 3 (1980). The gun sale to Matthew Abel was clearly admissible as evidence of the charge that Johnson was an unlicensed gun dealer. The $1,400 in cash and the empty plastic ziplock bags were admissible to show the defendant's

6

crack sales in Virginia and Tennessee. *See United States v. Cruz*, 797 F.2d 90, 95-96 (2d Cir. 1986). The organizer, which contained the names of Johnson's co-conspirators in New York, was admissible to show the defendant's participation in the conspiracy. The gun found in the defendant's car was admitted because it corroborated a government witness who testified that (1) not long before the car search, he had sold Johnson a number of Rugers, and (2) not long after the search, Johnson told the witness that he needed more Rugers to replenish the ones that the police had taken from him.

As to the admissibility of evidence that proves that Johnson committed crimes of which he had been acquitted in state court, state acquittals do not bar subsequent federal prosecutions on double jeopardy grounds, *United States v. Wheeler*, 435 U.S. 313, 316-17 (1978), and Johnson has failed to show that collateral estoppel was available to him. *See Ashe v. Swenson*, 397 U.S. 436 (1970).

In any event, Brettschneider in fact objected to the admission of the gun sale to Abel on the grounds that the evidence was irrelevant, prejudicial and represented conduct of which Johnson was acquitted. Tr. 185-186. He also objected to the gun found during the car search and to evidence of Johnson's crack sales in Virginia and Tennessee. Tr. 9-15. He did not make a motion to suppress with respect to the two car searches described above, because he did not think that such motions would succeed. Brettschneider Aff. ¶ 5.

Finally, Johnson complains that Brettschneider did not object when he was cross-examined about his crack sales in Virginia and Tennessee. As already noted, Brettschneider did object to the introduction of evidence of the crack sales in Virginia and Tennessee, and that objection was correctly overruled. In any event, when Johnson took the stand and testified that

7

he had never sold guns or been involved in drug deals, he invited the cross-examination about which he now complains.

       3.      The Jurisdictional Element of § 922(a)

Johnson complains that Brettschneider did not challenge the firearm-dealing count in the indictment for failing to allege an effect on interstate commerce. The indictment alleged that Johnson, not being a licensed dealer, engaged in the business of dealing in firearms. But the statute that the defendant was charged with violating, 18 U.S.C. § 922(a)(1)(A), makes it a crime for an unlicensed person to (1) "engage" in the business of importing, manufacturing or dealing in "firearms" *or* (2) in the course of such a business, to ship, transport or receive any "firearm" in interstate or foreign commerce. The Second Circuit has held that the phrase "in interstate or foreign commerce" in section 922(a)(1)(A) does not modify the first clause of the statute. *United States v. Ruisi*, 460 F.2d 153, 155-56 (2d Cir. 1972); *United States v. Hornbeck*, 489 F.2d 1325, 1326 (7th Cir. 1973) (agreeing with *Ruisi* and holding that the statute, so construed, is constitutional); *United States v. Allah*, 130 F.3d 33, 40 (2d Cir. 1997) ("all unlicensed dealing in firearms -- *whether interstate or intrastate* -- is prohibited" under section 922(a)(1) (emphasis added)).

The indictment charged the defendant with dealing in firearms. Thus, there was no need for the indictment to allege separately or for the government to prove, an effect on interstate commerce.

       4.      The Cross-Examination of Officer Crabtree

Johnson claims that Brettschneider was ineffective because he failed to cross-examine Officer Crabtree. Crabtree's brief testimony established that, during a search of

Johnson's car, he recovered a Ruger pistol and an organizer. Tr. 211-14.

Brettschneider did not commit an unprofessional error by not cross-examining Crabtree. He believed that Crabtree was straightforward and believable and that it would have alienated the jury to suggest otherwise. Brettschneider Aff. ¶ 6. This was sound strategy and not ineffective assistance.

     5.     <u>The Tennessee and Virginia Evidence</u>

Johnson claims that Sternheim was guilty of ineffective assistance on the direct appeal. He argues that she should have challenged the ruling that Johnson's drug dealing in Tennessee and Virginia was admissible against him. This claim has no merit.

Johnson was charged with being a member of a conspiracy to distribute narcotics. His co-conspirators were centered in Brooklyn and sold crack cocaine and marijuana from that location. Johnson supplied them with guns, sometimes in exchange for money and sometimes in exchange for crack cocaine.

Johnson argued at trial and on appeal, and continues to argue on this petition, that the government did not establish that he was a part of this conspiracy. However, the government's evidence showed that after Johnson exchanged guns for crack in Brooklyn, he would take the crack back to Tennessee and Virginia and sell it there. The government argued that the evidence proved Johnson's participation in the conspiracy, which charged that all of the defendants conspired to distribute narcotics "in the Eastern District of New York and elsewhere."

Johnson cannot show actual prejudice from Sternheim's decision not to appeal the Court's ruling. Since the evidence clearly tended to prove that Johnson was a member of the same conspiracy as his co-defendants, an issue Johnson disputed, Sternheim cannot be criticized

9

for concluding that the trial court had broad discretion to admit such evidence. *United States v. Griffith*, 284 F.3d 338, 352 (2d Cir. 2002).

Moreover, Sternheim did not commit an unprofessional error by failing to appeal on this ground. After reviewing the record, she did not believe that this was among the defendant's most meritorious arguments. Sternheim Aff. ¶¶ 4, 5. This was a reasonable winnowing of arguments by appellate counsel, which, the government correctly contends, defeats Johnson's claim of ineffective assistance.

Johnson further complains that Sternheim should have appealed the ruling that the government could introduce evidence of crimes of which the defendant was acquitted in state court. As discussed above, the ruling was based upon Supreme Court case law and was correct. Sternheim's decision not to appeal on that ground was reasonable.

6. The Lesser-Included Offense Claim

Johnson complains that his counsel did not object to his being convicted of both conspiracy counts since, according to the defendant, the conspiracy to distribute narcotics is a lesser included offense of the conspiracy to distribute narcotics within 1,000 feet of a school. But Johnson was sentenced to concurrent terms of life imprisonment on the two conspiracy counts. Thus, even if the first conspiracy count were to be dismissed, it would not alter Johnson's sentence of life imprisonment. For this reason, the claim does not satisfy the second prong of *Strickland*. See *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

In any event, the Second Circuit did not decide that distribution of narcotics is a

lesser included offense of distribution of narcotics within 1,000 feet of a school until 2001, which was two years after the trial in this case. *United States v. White*, 240 F.3d 127, 133 (2d Cir. 2001). An attorney is not required to "forecast changes or advances in the law." *Jameson v. Coughlin*, 22 F.3d at 429; *see also Smith v. Murray*, 477 U.S. 527, 536 (1986) (holding that challenges to counsel's effectiveness are viewed in light of the law existing at the time counsel was representing the petitioner); *Clark v. Moran*, 942 F.2d 24, 33 (1st Cir. 1991) (reasonably effective assistance does not require arguments based on prediction of how law will develop).

Johnson also complains that Brettschneider should have requested what Johnson calls a jury instruction on a lesser included offense. He explains that the jury was asked to determine whether Johnson had participated in conspiracies involving 50 or more grams of crack cocaine. *See* 21 U.S.C. §§ 841(b)(1), 860(a). Johnson claims that Brettschneider should have requested an interrogatory with a lower threshold drug amount, not just the 50 gram threshold. But the jury was indeed given the option of convicting Johnson of the "lesser included offense" Johnson appears to have in mind. Specifically, the jury had the option of finding him guilty but answering the interrogatories in the negative.

7. The Base Offense Level Calculation

Johnson contends that Sternheim, who represented him during his sentencing hearing, improperly failed to object to the Probation Department's calculation of the offense levels for the two drug conspiracies of which Johnson was convicted. But Sternheim did object to the defendant's guideline offense level, which resulted in a sentencing hearing, at which Sternheim called witnesses to challenge the guideline calculation. After hearing the evidence at the sentencing hearing, I found that Johnson should be held accountable for at least 1.5 kilograms

of crack cocaine.[1]

## CONCLUSION

For the reasons set forth above, the petition is denied. Because Johnson has failed to make a substantial showing that he was deprived of his constitutional rights, *see* 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.

So Ordered.

John Gleeson, U.S.D.J.

Dated: February 27, 2006
       Brooklyn, New York

---

[1] Johnson appears to claim that the Court erred in calculating the weight of the drugs for which he was responsible as being 1.5 kilograms of crack. The argument is difficult to follow, but Johnson claims that the crack that was counted was not part of the crime for which he was convicted. In fact, Johnson was accountable for 1.5 kilograms of crack in connection with the offense of conviction alone.

Johnson's supplemental claim that I have the authority to set his sentence aside by declaring retroactive the holding in *United States v. Booker*, 125 S. Ct. 738 (2005) is incorrect. The Second Circuit has held that *Booker* affords no relief to defendants (like Johnson) whose convictions were final as of January 12, 2005, the date *Booker* was decided. *Guzman v. United States*, 404 F.3d 139, 141 (2d Cir. 2005).